UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SISONGHKAME "KENNY" PANYANOUVONG, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>VONGSAKOUN APHAY a/k/a TINA APHAY, a/k/a TING APHAY, AND THE MARITAL COMMUNITY COMPOSED OF JUAN APHAY AND VONGSAKOUN APHAY,<br><br>Defendants. | NO. 2:14-cv-00275 RSM<br><br>ORDER ON MOTIONS |

THIS MATTER comes before the Court on Plaintiffs' Motion for Temporary Restraining Order (Dkt. # 7) and Motion to Compel Defendants' Participation in Framing Discovery Plan (Dkt. # 17). On June 2, 2014, the Court entered an Order converting the Motion for Temporary Restraining Order to a Motion for Preliminary Injunction and setting a briefing schedule and hearing date to allow Defendant Vongsakoun Aphay an opportunity to respond. Mrs. Aphay has since failed to file a responsive brief, to appear at the scheduled hearing, or to otherwise participate in this suit. Having considered the pleadings and the relevant record and for the reasons stated herein, the Court grants in part Plaintiffs' Motion for Preliminary Injunction, grants Plaintiffs' Motion to Compel, and orders Defendants to show cause why default judgment should not be entered against them.

**Factual Background**

Plaintiffs bring this action for fraud under the Securities and Exchange Act §§ 10(b)(5) and 29(b), common law fraud, and violation of the Washington Consumer Protection Act.

ORDER ON MOTIONS - 1

Plaintiffs are individuals in a community that emigrated from Laos to the United States and Canada, predominantly in the 1970s and 1980s. They allege that Mrs. Vongsakoun Aphay was instrumental in her husband, Mr. Juan Aphay's, perpetration of a sophisticated fraudulent scheme that deprived them of substantial personal assets. *See* Dkt. # 1.

Plaintiff Sisongkhame "Kenny" Panyanouvong, who attended school with Juan Aphay in Laos, is the alleged first victim of the scheme. In 2007, Mr. Panyanouvong visited Mr. Aphay in Houston, where Mr. Aphay told him that he worked for IBC, which owned the Hostess companies, and had been operating as an independent distributor of Hostess products for the last five or six years. *See* Dkt. # 8, ¶ 3. Mr. Aphay informed him that he possessed two distribution routes in the Houston area and that IBC intended to sell additional routes to independent distributors in order to cut costs. *See id.* Mr. Aphay represented himself as the owner of the business "Bull's Eye Services," which possessed the exclusive right to purchase delivery routes from IBC and the right to transfer them to other purchasers. He represented that obtaining a route entitled the purchaser to great profits from the deliveries, specifically that the original investment would be returned in 2 to 2.5 years with a 40% profit margin. *See id.* at ¶ 4. Mr. Aphay represented that he would manage the routes and take a 15% commission from the weekly payment for the deliveries. *See id.* at ¶ 5. While in Houston, Mr. Panyanouvong saw a delivery truck used for Mr. Aphay's deliveries and personally checked some of the stores on the delivery route. *See id.* at ¶ 4.

Mrs. Aphay was present at the meeting between Mr. Aphay and Mr. Panyanouvong. Mr. Panyanouvong later learned that Mrs. Aphay had registered the company "Bulls Eye Services" in her name and opened an account with Bank of America identifying herself as the owner of the sole proprietorship. *See id.* at ¶ 5. Mr. Panyanouvong purchased one route in 2007. After it performed well, he continued to buy routes and advised family and members of the Laotian expatriate community to participate. *See id.* at ¶ 6.

The additional Plaintiffs in this action also purchased delivery routes from Mr. Aphay. One such purchaser was Plaintiff Kyle Louangrath, a high school friend of Mr. Aphay's in Laos. *See* Dkt. # 8, ¶ 2. Mr. Aphay represented to Mr. Louangrath that the routes yielded 20 to 25% on the original investment without risk. *See id.* at ¶ 4. Mrs. Aphay witnessed these statements and bragged about the wealth she had acquired in the enterprise, allegedly in order

to induce Mr. Louangrath's investment. *See id.* at ¶ 14. Mr. Aphay traveled extensively after 2010, visiting Mr. Louangrath and his wife at their home in Everett, WA, and displaying a lavish lifestyle. *See id.* at ¶ 5. In alleged reliance on Mr. Aphay's representations, Mr. Louangrath purchased Route 52 for $72,950.75 in fall 2010, using funds from his and his wife's savings and 401K accounts. Mr. Aphay also sold Mr. Louangrath and his wife a 25% interest in Route 71 for $92,083.25 on April 25, 2012. Mr. Louangrath made further deposits on two routes in 2012 for $4,375 and $51,875, respectively. The net loss to Mr. and Mrs. Louangrath has amounted to $138,307.14. *See id.* at ¶¶ 6-8.

Plaintiffs allege that Defendants deposited their funds into Mrs. Aphay's "Bulls Eye Services" checking account rather than using them for route purchases. Plaintiffs allege that the Aphays thereafter used the funds solely for their personal consumption. *See, e.g.*, Dkt. # 8, ¶ 7; Dkt. # 7. In addition to payments for false route purchases, Plaintiffs were required to pay annual amounts, which they understood was to be used for the drivers' vacations and holiday pay and for taxes due to the Internal Revenue Service. Plaintiffs assert that the Aphays used these funds for their personal consumption as well. *See, e.g.*, Dkt. # 9, ¶ 12; Dkt. # 7.

On January 11, 2012, the Hostess companies filed for Chapter 11 bankruptcy. Mr. Aphay assured those who inquired about the effects of the bankruptcy that their investments were secure. He continued to solicit and accept new investments without informing investors of the bankruptcy proceeding through November 2012, when the Court ordered that Hostess liquidate its assets and the Aphays' scheme was uncovered. *See* Dkt. # 9, ¶ 13.

Plaintiffs allege that Mrs. Aphay was instrumental in the scheme to defraud them. They allege that she accompanied Mr. Aphay at gatherings with investors and heard his statements. They further allege that she knew those statements to be false and discussed her wealth with potential investors to induce their participation.

**Procedural Background**

On October 28, 2013, Plaintiffs filed a complaint, nearly identical to the instant complaint, against Juan Aphay as the sole Defendant in a separate action before this Court. *See* Case No. 2:13-cv-01924RSM. Mr. Aphay failed to appear or defend, and default was entered against him on December 3, 2013. The Court awarded default judgment against Juan

ORDER ON MOTIONS - 3

Aphay in the amount of $2,988,40.22 plus interest, the identical award requested in the instant action. Case No. 2:13-cv-01924, Dkt. # 27.

Plaintiffs filed the instant complaint against Mrs. Aphay and the marital community on February 25, 2014. Dkt. # 1. Defendant Vongsakoun Aphay, appearing *pro se*, filed an Answer on April 8, 2014, denying all claims and allegations. Dkt 5. On May 13, 2014, Plaintiffs filed the instant Motion for Temporary Restraining Order and for Order to Show Cause, moving the Court to restrain Defendants and any party acting on their behalf, including Chase Bank, for transferring, assigning, selling, or otherwise disposing of property, funds, assets, or securities held in Defendants' names. Plaintiffs also moved the Court for an order directing Defendants to appear and show cause why a preliminary injunction should not be entered restraining the disposal of their assets. *See* Dkt. # 7.

In reviewing the Motion, the Court discovered that the nearly identical former complaint had been filed against Mr. Aphay and that default judgment had been awarded. As this previous case was not mentioned by Plaintiffs in their Motion, the Court entered an Order to Show Cause why the claims raised in this lawsuit are not barred under the doctrine of *res judicata* based on the entry of default judgment in Case No. 2:13-cv-01924RSM. The Court further ordered counsel to show cause why sanctions should not be imposed for failure to alert the Court to the previous adjudication of these claims. *See* Dkt. # 11.

After receiving Plaintiffs' response to the show cause order (Dkt. # 12), the Court entered an Order denying Plaintiffs' Motion for Temporary Restraining Order as Plaintiffs failed to demonstrate that irreparable injury would occur before Mrs. Aphay could be heard in opposition. The Court accordingly construed the Motion as one for preliminary injunction and set a briefing schedule as well as the instant hearing date. *See* Dkt. # 16. Mrs. Aphay has failed to respond as directed or to otherwise participate in this action subsequent to filing her Answer in April.

Due to Defendants' lack of participation in the suit, Plaintiffs filed a Motion to Compel on June 16, 2014. Dkt. # 17. Plaintiffs allege that Mrs. Aphay has failed to respond to Plaintiffs' attempts to confer in framing a discovery plan or to participate in the Court-ordered Fed. R. Civ. P. 26(f) conference. They consequently move the Court to enter an order compelling her participation in framing a discovery plan and to award attorneys' fees

ORDER ON MOTIONS - 4

associated with having to bring this motion and additional sanctions as appropriate.

## Analysis

### Res Judicata

As an initial matter, prior to reaching Plaintiffs' motion for injunctive relief, the Court solicited briefing from Plaintiffs as to whether the instant action should be barred by the doctrine of res judicata, given the Court's grant of default judgment in the identical action brought against Defendant's husband. The Court finds Plaintiffs' response satisfactory and allows this matter to proceed for the reasons provided below. The Court reminds counsel that "in an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse." *Campbell v. Rice*, 408 F.3d 1166, 1175 (9th Cir. 2005). Nonetheless, the Court finds that counsel's omission of facts related to the previous action against Mr. Aphay was inadvertent and filings were made in good faith and hence refrains from imposing sanctions.

In general, where, as here, claims are brought in separate lawsuits against multiple parties who are liable for the same harm, the court considers the claims to be separate. Restatement (Second) of Judgment § 49(a) (1982). "Accordingly, a judgment for or against one obligor does not result in merger or bar of the claim that the injured party may have against another obligor." *see also Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367 (2d. Cir. 1995) ("When a litigant files consecutive lawsuits against separate parties for the same injury, the entry of a judgment in the prior action does not bar the claims against other potentially liable parties."). However, a plaintiff's ability to maintain separate actions against multiple obligors is subject to important constraints, including claim preclusion and the rule against double recovery. Double recovery is "foreclosed by the rule that only one satisfaction may be obtained for a loss that is the subject of two or more judgments." Restatement (Second) of Judgment § 49(a). "A payment by one person liable for a loss reduces pro tanto the amount that the injured person is entitled to receive from other persons liable for the loss." Restatement (Second) of Judgment § 50(c). *See Royal Indem. Co. v. Olmstead*, 193 F.2d 451, 455 (9th Cir. 1951) ("The general rule is

1    that when a plaintiff secures satisfaction of a judgment against one joint tort-feasor, judgments against other joint tort-feasors are thereby deemed satisfied…. [A] plaintiff should have but one recovery for the injuries suffered."); *St. Clair v. Eastern Air Lines, Inc.*, 302 F.2d 477, 479 (2d Cir. 1962) (holding that where plaintiff brought separate claims against joint tort-feasors in two different suits, "the total recovery against them must be limited to the amount of the larger of the two judgments.").

"Res judicata, or claim preclusion, 'bars any lawsuits on any claims that were raised or could have been raised in a prior action.'" *F.T.C. v. Garvey*, 383 F.3d 891, 897 (9th Cir. 2004) (quoting *Providence Health Plan v. McDowell,* 361 F.3d 1243, 1249 ((9th Cir. 2004)). Claim preclusion applies where there is (1) an identity of claims, (2) final judgment on the merits, and (3) identity or privity between parties. *Id.* Default judgments are considered final judgments on the merits for purposes of res judicata and "are thus effective for the purposes of claim preclusion." *In re Garcia*, 313 B.R. 307, 311-12 (9th Cir. 2004) (quoting *Howard v. Lewis*, 905 F.2d 1318, 1323 (9th Cir. 1990)).

For the purposes of res judicata, privity "is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *Id.* (quoting *In re Schimmels*, 127 F.3d 875, 881 (9th Cir .1997)). "Privity is a flexible concept dependent on the particular relationship between the parties in each individual set of cases." *Id.* (internal citation and quotation omitted); *see also Va. Sur. Co. v. Northrop Grumman Corp.*, 144 F.3d 1243, 1247 (9th Cir. 1998). In *F.T.C. v. Garvey*, the Ninth Circuit found that claim preclusion did not apply where there was no indication that defendants were acting on behalf of those in the prior lawsuit and where they were not sufficiently connected to justify barring the later brought claims. 383 F.3d at 898.

The Court finds that claim preclusion does not bar the instant lawsuit where Plaintiffs lacked sufficient information to name Mrs. Aphay in the first lawsuit and where evidence does not establish that the Aphays were in privity. In assessing whether a claim is precluded, the Court may consider whether a plaintiff had sufficient information to name a particular defendant in a prior action. *Cent. Hudston Gas*, 56 F.3d at 367. Here, evidence submitted by Plaintiffs shows that they lacked substantial evidence of Mrs. Aphay's complicity in and

financial benefit from the fraudulent scheme at the time they filed the first action. *See* Dkt. # 13, ¶¶ 3, 4. While naming Mrs. Aphay in the prior action may have been prudent, it was not required. Further, in determining whether privity exists, the Court looks to whether a party "controlled or substantially participated in the control of the presentation on behalf of a party to the prior action." *Cent. Hudson Gas*, 56 F.3d at 368 (internal quotation and citation omitted). Where a defendant in a second action did not substantially control the defense in the first action, privity does not exist.[1] *Id.* Although Plaintiffs alleged that the Aphays conspired in the underlying offense, there is no indication that Mrs. Aphay controlled Mr. Aphay's default in the prior case. Her entry of an appearance in the instant action suggests otherwise. Accordingly, despite the substantial identity of claims and entry of final judgment on the merits in the prior action, the Court finds that privity is lacking and that res judicata therefore does not bar the instant action. Any award granted in this case shall be conditioned on the non-satisfaction of the judgment against Mr. Aphay in Case No. 2:13-cv-01924RSM so as to prevent double recovery.

**Preliminary Injunction**

A "preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). It is not enough that a plaintiff establish that it is possible that irreparable harm will result if relief is not granted. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). To obtain a preliminary injunction, the moving party must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of the equities tips in her favor, and (4) that an injunction is in the public interest. *Winter*, 444 U.S. at 24. *See also*, *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009). The court may balance these elements such that "a strong showing of one element may offset a weaker showing of another." *Alliance for Wild Rockies*, 632. F.3d at 1131.

---

[1] In addition, the relationship between husband and wife does not, in itself, give rise to privity for purposes of claim preclusion. *See* Moore's Federal Practice 3d. Vol. 18, § 131.40(d)(3) (2014).

ORDER ON MOTIONS - 7

With respect to the first element, Plaintiffs have shown that they are likely to succeed in proving that Mrs. Aphay fraudulently deprived them of their assets for her own personal gain. Plaintiffs present extensive, uncontroverted evidence of the fraudulent scheme. The entry of default judgment in the prior case underscores Plaintiffs' chance of success on the merits. Here, the Court further construes Mrs. Aphay's failure to respond to the instant Motion and to appear for this hearing as an admission that the facts and claims alleged have merit. *See* LCR 7(b)(2) ("Except for motions for summary judgment, if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit.").

With respect to the second prong, Plaintiffs must demonstrate that irreparable harm is likely, and not merely possible. *See Johnson v. Coutier*, 572 F.3d 1067, 1081 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 24). Where a party seeks an asset freeze, the party must show that it is likely that the claimed assets will be dissipated, or that it will be otherwise unable to recover monetary damages if relief is not granted. *Id.* at 1085. In *Johnson*, the Ninth Circuit found that a defendant, who had impermissibly awarded himself tens of millions of dollars in compensation, was "presumably more than capable of placing assets in his personal possession beyond the reach of a judgment." *Id.* As in *Johnson*, the Court finds that the Aphays' own conduct establishes that is likely that in the absence of an asset freeze, Plaintiffs will not be able to recover the funds. As the Aphays have demonstrated a propensity to consume illegally begotten monies for their personal pleasure, Plaintiffs will be irreparably harmed if the Aphays continue to do so despite the initiation of this Court action. The likelihood of harm is underscored by the substantial disrespect for the authority of the Court that the Aphays have demonstrated by failing to appear and defend in the first action and to respond to Court orders in the instant one.

Both the balance of the hardships and the public interest favor granting injunctive relief in this case. Plaintiffs have lost a significant portion of their personal savings and are having to expend additional savings prosecuting this action against Defendants who fail to properly participate. While Defendants will be undeniably burdened by an asset freeze, this freeze shall be conditioned to allow their access to funds for reasonable living expenses to minimize undue hardship. The public interest also favors the award of a preliminary

injunction to prevent the perpetration of fraud against trusting friends and members of the expatriate Laotian community.

Having found that preliminary injunctive relief should issue, the Court must require the movant to "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c). The district court enjoys broad discretion in setting the bond amount, which may be set at zero if there is no evidence that the enjoined party will suffer damages from a wrongful injunction. *See Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000). The Court finds that the risk that Defendants will be wrongfully enjoined is minimal, given Defendants' failure to oppose the instant Motion and the weight of the evidence supporting Plaintiffs' substantial likelihood to succeed on the merits. Moreover, the risk that Defendants would suffer damages in the unlikely event of wrongful injunctive relief is minimal, as the injunction merely preserves Defendants' assets during the pendency of this litigation and carves out an allowance for ordinary living expenses to avoid undue burden. The Court accordingly sets the bond amount at zero.

As to the form of relief, the Court enjoins Defendants from disposing of property, funds, assets or securities in their name or held in the name of any company owned or operated by them, except for payment of expenses in the ordinary course of living. Such relief is clearly warranted and within the authority of the Court to provide. As to Plaintiffs' additional request for an injunction barring Chase Bank and other unnamed third-parties from disposing of Defendants' assets, the Court finds that it lacks authority to grant such relief, and Plaintiffs formally relinquished this request upon oral argument.

**Motion to Compel**

Plaintiffs additionally move the Court for an order compelling Defendants' participation in framing a discovery plan. *See* Dkt. # 17. On May 27, 2014, the Court issued a scheduling order requiring the parties to hold a Fed. R. Civ. P. 26(f) Conference by 6/9/2014 and to provide initial disclosures by 6/16/204 and a joint status report by 6/23/2014. Plaintiffs aver that, despite repeated efforts to contact Mrs. Aphay by mail and fax at the addresses provided, they have received no response and Defendants have failed to abide by any of these

Court-ordered deadlines. *See* Dkt. # 18. In light of Plaintiffs' diligent efforts and Mrs. Aphay's neglect of the Court's Orders, the Court finds that good cause exists to grant the requested relief.

Federal Rule of Civil Procedure 37(f) provides that where "a party or its attorney fails to participate in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f), the court may, after giving an opportunity to be heard, require that party or attorney to pay to any other party the reasonable expenses, including attorney's fees, caused by the failure." Having found that Defendants failed to participate in developing a proposed discovery plan and having afforded Defendants a reasonable opportunity to be heard, of which Mrs. Aphay failed to avail herself, the Court finds that an award of attorney's fees associated with preparation of the instant Motion to Compel is warranted. Plaintiffs shall submit documentation as to the reasonable expenses incurred in preparing the instant Motion if they wish to pursue this award.

## Order to Show Cause

The Federal Rules further allow for this Court to sanction Defendants, including through the entry of default judgment, for their failure to provide or permit discovery. *See* Fed. R. Civ. P. 37(b)(2)(A)("If a party…fails to obey an order to provide or permit discovery, including an order under Rule 26(f)…, the court where the action is pending may issue further just orders [, including] (vi) rendering a default judgment against the disobedient party."). Defendants have failed to take any action in this case subsequent to their Answer, thereby disobeying multiple orders of the Court, including those related to provision of discovery. Forcing Plaintiffs to prosecute an action where Defendants have effectively defaulted causes undue prejudice to Plaintiffs and clogs this Court's calendar with futile motions. In the entrance of judicial economy and the just and fair resolution of this action, the Court accordingly orders Defendants to show cause within twenty (20) days of the entry of this Order why default judgment should not be entered against them based on their failure to participate in discovery and to abide by the Orders of this Court.

## **Conclusion**

For the reasons stated herein, the Court hereby finds and ORDERS as follows:

(1) Plaintiffs' Motion for Temporary Restraining Order, construed as a Motion for Preliminary Injunction (Dkt. # 7), is GRANTED in part as follows:

    a. Defendants Vongsakoun Aphay and the marital community composed of Juan Aphay and Vongsakoun Aphay are immediately restrained from transferring, assigning, selling, hypothecating, changing, wasting, dissipating, converting, concealing, encumbering, or otherwise disposing of, in any manner, property, funds, assets or securities held in the name of Defendants, or either of them, or in the name of any company controlled by the Defendants, or either of them, except for payment of expenses in the ordinary course of living.

(2) Plaintiffs' Motion to Compel (Dkt. # 17) is GRANTED.

    a. Defendants are hereby ORDERED to participate in the framing of a discovery plan pursuant to Fed. R. Civ. P. 26(f).

    b. Defendants are liable for Plaintiffs' reasonable attorney's fees and costs incurred in filing this Motion to Compel. Plaintiffs shall submit documentation of reasonable fees and costs if they wish to pursue a fee award.

(3) Defendants are ORDERED to SHOW CAUSE within <u>twenty (20) days of the entry of this Order</u> why default judgment should not be entered against them on account of their failure to participate in discovery and to abide by the Orders of this Court.

(4) The Clerk is directed to forward a copy of this Order to Defendants at the addresses provided.

DATED this 1 day of July 2014.

*[signature]*
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE